```
            UNITED STATES DISTRICT COURT
               DISTRICT OF MINNESOTA
                 06-CV-2855(JMR/FLN)
```

Advantus Capital Management,  )
Inc., and Advantus Series     )
Fund, Inc.                    )
                              )
          v.                  )         ORDER
                              )
Aetna, Inc.                   )

Plaintiffs seek a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") to protect their trademark, Advantus, from infringement by defendant, Aetna, Inc. Aetna opposes the motion. For the following reasons, plaintiffs' motion is granted.

I. Background[1]

Plaintiffs, Advantus Capital Management, Inc., and Advantus Series Funds, Inc., are part of Securian Financial Group, Inc. Each is incorporated and has its principal place of business in Minnesota. Plaintiffs have used the Advantus mark continuously since 1995 in their financial services businesses which provide financial products to employers and individuals across the nation. Plaintiffs have registered federal trademark number 2,663,467, which covers their use of the Advantus name for mutual fund, investment advisor, and asset management services.

---

[1] Because this is a preliminary injunction matter, the Court has not made definitive findings of fact. The Court's statement of facts is based on the parties' pleadings and affidavits. Thus, the "facts" are not to be considered final determinations of disputed matters.

Aetna is a large nationally-known company which markets a wide variety of insurance and related services.  Over the past few years, Aetna has acquired a number of previously independent health care entities.  Aetna has, apparently, acquired these companies in order to re-brand or co-brand these health service provider networks and operate them as an Aetna division using the Advantus name.

Aetna has filed intent-to-use applications for federal trademarks on various Advantus marks for use in a wide variety of goods and services, including health care provider network services; administration of medical, dental, pharmacy, and behavior health insurance services; and insurance claims processing and administration. The U.S. Patent and Trademark Office ("USPTO") has approved the application.

Plaintiffs claim Aetna's Advantus mark infringes their trademark.  They seek a preliminary injunction to prevent consumer confusion in the financial and benefits market.  Aetna admits it intends to offer health care administration services to insurance companies and employers who provide health benefits to their employees. According to plaintiffs, these employers and employees are the same class of consumers served by plaintiffs.  On inquiry by the Court during oral argument, Aetna's counsel declined to provide any assurance that Aetna would restrict its use of the Advantus mark to the health care industry.

Aetna offered evidence showing other parties' use of the Advantus name and its phonetic equivalent. Plaintiffs responded, saying very few of the other users are in the financial services industry, and those which are tend to be locally-based, financially insignificant, and do not compete with plaintiffs.

II. Discussion

The Court is well aware that an injunction is an extraordinary remedy, and the burden of proof rests entirely with the movant. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). When considering a request for a preliminary injunction, a court balances four factors: (1) the threat of irreparable harm to the plaintiff; (2) the balance between that harm and any injury the injunction would inflict on other parties; (3) whether the plaintiff has demonstrated probable success on the merits; and (4) whether the injunction will serve the public interest. Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981). Probable success on the merits is frequently noted as the most important factor. S&M Constructors, Inc. v. Foley, 959 F.2d 97, 98 (8th Cir. 1992).

    A. Success on the Merits

A claim of trademark infringement requires (1) ownership of a valid trademark; and (2) a likelihood of confusion between the registered mark and the alleged infringing use. Minnesota Mining & Mfg. Co. v. Rauh Rubber, Inc., 943 F. Supp. 1117, 1128 (D. Minn.

3

1996).  Here, the parties do not dispute the validity of plaintiffs' trademark.  As such, the issue devolves into an inquiry as to whether defendant's use of the Advantus mark creates a "substantial likelihood that the public will be confused" about the origin of the services.  Downtowner/Passport Intern. Hotel Corp. v. Norlew, Inc., 841 F.2d 214, 219 (8th Cir. 1988).

To determine whether a likelihood of confusion exists, the Court considers six factors:  (1) the strength of plaintiffs' mark; (2) the similarity between plaintiffs' and defendant's marks; (3) the competitive proximity of the products on which the respective marks are placed; (4) defendant's intent to "pass off" its services as those of plaintiffs; (5) incidents of actual confusion; and (6) the degree of care likely to be exercised by potential customers of the trademark holder.  Mutual of Omaha Ins. Co. v. Novak, 836 F.2d 397, 399 (8th Cir. 1987).  No one factor controls; "the inquiry is inherently case-specific [and] different factors may be entitled to more weight in different cases."  Kemp v. Bumble Bee Seafoods, Inc., 398 F.3d 1049, 1054 (8th Cir. 2005).

    1.   Strength of the Mark

Plaintiffs' mark is strong.  Advantus is a coined, or invented, word – one not found in the dictionary.  The law recognizes a word coined for the sole purpose of identifying products in the marketplace as the strongest of marks because its "inherent novelty creates a substantial impact on the buyer's

4

mind." Aveda Corp. v. Evita Marketing, Inc., 706 F. Supp. 1419, 1428 (D. Minn. 1989). A strong mark, such as Advantus, is afforded greater protection than a weak or commonplace one. See Frosty Treats, Inc. v. Sony Computer Entm't Am. Inc., 426 F.3d 1001, 1008 (8th Cir. 2005).

As an initial matter, the Court finds Aetna's argument that plaintiffs' mark is weak because others already use the Advantus name to be unpersuasive. The probative value of third-party trademarks depends entirely on their usage. Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772, 396 F.3d 1369, 1373 (Fed. Cir. 2005). Third-party marks which are used to promote "entirely unrelated products" are of minimal relevance. Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1174 (2d Cir. 1976). Here, the other Advantus users do not compete with any of the parties before this Court. Most of the users are not in the financial services industry beyond the very narrow geographic area they serve. Thus, the mere existence of third-party uses does not sap the strength of plaintiffs' mark.

To the contrary, plaintiffs have used their registered Advantus trademark for more than eleven years. While there is little evidence at this early stage in the litigation of the public's recognition of the name, it is well known to the Court, through advertising and use in the community. While the Court has never done any business with the company, and knows none of its

5

officers or employees, the Court recognizes the entity with no difficulty and understands that Advantus sells investments and investment services. This factor favors plaintiffs.

    2. <u>Similarity of the Marks</u>

There can be no greater similarity between words than identicality. Here, the dominant word in both parties' marks is "Advantus." Out of the entire universe of contrived terms, Aetna has knowingly chosen the exact coined term plaintiffs have used to brand their services. This factor weighs heavily in favor of plaintiffs.

    3. <u>Competitive Proximity</u>

It is here that Aetna has placed its bet. And it loses. The Court has no difficulty in finding, at this preliminary point in the litigation, that these parties each seek to be known and participate in the market for employee benefits. Aetna argues that since it sells health care plans, the benefits-purchasing public could not possibly confuse its products with plaintiffs' investment services and investments. The Court does not agree.

A person purchasing health care coverage may very well believe the Advantus product he or she chooses was assembled under the aegis of plaintiffs' well-known Advantus financial business. Beyond this, and looking at Aetna's argument from the other side, a party who has purchased an Aetna-Advantus health care plan may well – after examining the fine print and finding Aetna involved in

the Aetna-Advantus health care plan – desire to obtain other financial planning instruments, and look to Aetna rather than Advantus to provide them. Aetna is a colossus in the financial industry; its products are not limited to insurance plans. As stated above, Aetna's own counsel declined to give the Court any assurance that the proposed Aetna-Advantus line would be restricted to health care plans.

The Court further considers that plaintiffs' Advantus mark is entitled to trademark protection, both up and downstream. Aetna blithely suggests health plan purchasers are sophisticated and cannot be confused. There is absolutely no evidence to support this suggestion. But even assuming health plan purchasers to be sophisticated, it does not follow that health care plan participants – the health plan end users – are similarly sophisticated. In the Court's view, these end-purchasers may well believe health insurance is not particularly different from other kinds of financial protection or financial plans. After all, to the consumer, a health insurance program is simply an investment which protects the purchaser's own health.

Employees covered by the putative Aetna-Advantus health insurance plans may see Aetna-Advantus on their insurance card or on the health insurance plan itself. They will see the same Advantus name they had heard of previously, or whose products they may have purchased through their employer. Aetna proudly proclaims

7

itself to be clothed "with the power of Aetna" – and so it is. But such "power" is also market power, and the consumer could very well think plaintiffs' Advantus investments are also part of Aetna. Indeed, Aetna is so large that if chooses to advertise its health insurance systems under the Advantus brand, the Court perceives a real possibility that plaintiffs could be swallowed by the Aetna brand, itself.

The Court again considers Aetna's counsel's circumspection during oral argument, carefully stating that Aetna only wants to use the name Advantus in the co-branding of its health insurers "at this time." The words "at this time" almost became a mantra. When an entity as deeply engaged in financial services as Aetna starts to expand, there is a great possibility that Aetna-Advantus may overflow into the financial services market. This factor strongly favors plaintiffs.

    4.   <u>Defendant's Intent</u>

"An inference of an intent to trade upon the plaintiff's good will arises if the defendants, with knowledge of plaintiff's mark, chose a mark similar to that mark from the infinite number of possible marks." <u>Aveda Corp.</u>, 706 F. Supp. at 1429. Aetna admits it is fully aware of plaintiffs' use of the Advantus mark. Aetna, then, claims it could not possibly derive any benefit from plaintiffs' use of Advantus, because plaintiffs are small companies, and Aetna is a giant.

8

As discussed, plaintiffs' problem is not only that consumers will confuse Aetna's health plans as belonging to them, but perhaps its greater concern is that consumers will think plaintiffs' services are part of Aetna. There is a significant risk that the advent of Aetna-Advantus will cause "reverse confusion," which "occurs when a large junior user saturates the market with a trademark similar or identical to that of a smaller, senior user." Minnesota Pet Breeders, Inc. v. Schell & Kampeter, Inc., 41 F.3d 1242, 1246 (8th Cir. 1994). Even granting to Aetna a level of good faith, and assuming Aetna does not seek to profit from the goodwill associated with plaintiffs' mark, the public is still likely to be confused, and plaintiffs will be injured. See id.

Finally, evidence that a defendant intended to pass off its services as plaintiffs is not essential to an infringement claim. Its presence or absence is only one factor to be considered along with the other likelihood of confusion factors. Mutual of Omaha Ins. Co., 836 F.2d at 400.

5. Actual Confusion

On this point, defendant engages in a sophistry: Aetna loudly claims plaintiffs have offered no evidence of actual confusion. How could there be? Aetna has just begun using the Advantus name. This case is plaintiffs' effort to prevent the very marketplace confusion which Aetna loudly proclaims has not occurred.

9

It is here that the sophistry becomes pernicious, because if Aetna had its way, the Court would allow it to use the mark and saturate the marketplace with its advertising power. Then, indeed, there would be evidence of confusion. And so, Aetna's argument comes full circle: according to Aetna, the only way plaintiffs could demonstrate actual confusion would be to put themselves, and their good name, in harm's way. Aetna wants to be allowed to use the Advantus name on its health care plans. The Court declines Aetna's offer to penalize plaintiffs for their ardor and expedition in seeking to protect their name and their effort to preclude – rather than suffer – marketplace confusion.

The test for infringement lies in the likelihood of confusion, not actual confusion; therefore, plaintiffs are not required to prove any instances of actual confusion. <u>David Sherman Corp. v. Heublein, Inc.</u>, 340 F.2d 377, 379 (8th Cir. 1965). The absence of demonstrated confusion, especially when plaintiff has prudently attempted to forestall it, does not weigh for or against either party on the issue of confusion.

    6.  <u>Purchaser Care</u>

To an extent, this issue has already been discussed. But defendant claims both plaintiffs' purchasers, and its own purchasers, are sophisticated, and likely to be careful in securing each parties' products. Indeed, investors and directors of health provider networks are likely to exercise substantial care in their

selection of investments and health plans. See e.g. Everest Capital Ltd. v. Everest Funds Mgmt., LLC, 393 F.3d 755, 761 (8th Cir. 2005). Defendant, however, ignores the final purchaser of both parties' respective services who is often an employee whose employer offers multiple health care and investment options as part of a comprehensive employee benefit program. In the absence of any evidence on the point, it seems to the Court that these purchasers may well trust their employer to select the options rather than investigate the companies on their own. Such reliance may well diminish an employee's ability to distinguish two Advantus benefit programs, one for a pension or IRA and the other for health care, provided by the same employer. Thus, this factor points to a likelihood of confusion.

The Court finds the likelihood of confusion factors weigh moderately in favor of plaintiffs. Therefore, plaintiffs are likely to succeed on the merits of this claim.

B.  Irreparable Harm

"Irreparable harm exists, as a matter of law, where there is trademark infringement." Minnesota Mining & Mfg. Co. v. Taylor, 21 F. Supp. 2d. 1003, 1005 (D. Minn. 1998). Thus, courts may presume irreparable harm when likelihood of confusion is demonstrated in a trademark case. General Mills, Inc. v. Kellogg Co., 824 F.2d 622, 625 (8th Cir. 1987). Moreover, the loss of goodwill toward a business is precisely the sort of irreparable harm that is properly

11

prevented through a preliminary injunction.

Here again, the Court heard defendant suggest that in the absence of demonstrated confusion, there is no irreparable harm. And here again, the Court sees no reason prudent trademark-holders ought to voluntarily subject themselves to "irreparable" injury solely to prove such injury exists. It is the nature of "irreparable injury" that it is irreparable; thus, dollars cannot compensate for it. This element favors plaintiffs.

### C. Balance of Hardships

"Where the moving party has made a substantial investment developing its trademark relative to the nonmoving party's investment in the allegedly infringing mark, the courts generally find that the moving party's hardship outweighs that of the nonmoving party." Aveda Corp., 706 F. Supp. at 1431. The Court considers that the balance of harms strongly favors plaintiffs.

Plaintiffs hold a registered trademark and have continuously used it for more than a decade. They have built a recognized name in the financial services industry. If plaintiffs' name is diminished or allowed to be ingested by a financial giant, plaintiffs' loss will be incalculable. It is to protect against such harm that equitable relief is available under Anglo-Saxon law. Plaintiffs' potential harms cannot be precisely calculated, and their injury cannot be adequately addressed at law.

Plaintiffs' use of the Advantus mark is in marked contrast to

the defendant's.  Until the past few months, Aetna has never used the mark; it sought only to protect its contemplated name within the year.  Other than its announcement and registration, it has hardly begun to use the Advantus mark.

As a result, Aetna has only the dollar-cost it paid to the company which helped it select plaintiffs' mark for its own use. Certainly, it has begun to re-brand the health care companies it is acquiring, but until very recently, those companies did not use the Advantus name.  Aetna's effort to create a stable of Advantus health care plans is merely aborning; the name has barely been introduced into the marketplace.

Certainly, Aetna claims it has expended some $750,000 in re-branding its acquisitions with the Advantus name.  This sum, however, must be considered in light of Aetna's extraordinary financial worth.  As a company with more than $10 billion in shareholders' equity,[2] the loss of a wholly predictable three-quarters of a million dollars is a very small injury for Aetna. Defendant simply assumed this risk when it knowingly adopted the Advantus name in the face of the plaintiffs' established use of the mark.

"[O]ne entering a field already occupied by another has a duty to select a trademark that will avoid confusion."  Wesley-Jesson

---

[2] 2005 Aetna Annual Report, Financial Report to Shareholders 41.

Div. of Schering Corp. v. Bausch & Lomb, Inc., 698 F.2d 862, 867 (7th Cir. 1983) (quotations omitted). Thus, the Court finds a real risk of incalculable and incompensable loss for plaintiffs, and an insignificant harm to defendant. This factor strongly favors plaintiffs.

    D.  Public Interest

The public has an interest in protecting intellectual property and preventing consumer confusion. Anheuser-Busch, Inc. v. Balducci Publications, 28 F.3d 769, 776 (8th Cir. 1994). Here, the public – as consumer - is interested in avoiding confusion as to the source of the products it purchases. There is also a legitimate public interest in protecting a smaller financial entity from predation at the hand of a larger one which can bear the risk inherent in expropriating the smaller party's good name.

This factor, too, favors plaintiffs and supports the invocation of the Court's equity powers.

III.  Conclusion

Having balanced the factors relating to the issuance of preliminary relief, and for the reasons set forth at the hearing, the Court grants plaintiffs' motion for a preliminary injunction.

Accordingly, IT IS ORDERED that:

1. Defendant, Aetna, Inc., and those it owns, as well as those it controls and those in active concert with it, are preliminarily enjoined from using the trademark Advantus.

    2. This injunction will be effective upon plaintiffs placing a $500,000 case or surety bond with the Clerk of this Court, in accordance with Fed. R. Civ. P. 65(c).

Dated: October 11, 2006

                                            s/ James M. Rosenbaum
                                            JAMES M. ROSENBAUM
                                            United States Chief District Judge